UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEVIN M. KELLY,

        Plaintiff,

 -v-              3:13-CV-1110

NEW YORK CITY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:           OF COUNSEL:

LEVINE, BLIT LAW FIRM        LEWIS G. SPICER, ESQ.
Attorneys for Plaintiff
499 South Warren Street
Suite 500B
Syracuse, NY 13202

NEW YORK CITY LAW DEPARTMENT   ERIC J. EICHENHOLTZ, ESQ.
Attorneys for Defendant
100 Church Street
New York, NY 10007

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

  On September 9, 2013, plaintiff Kevin M. Kelly ("plaintiff" or "Kelly") filed this 42 U.S.C. § 1983 action against his former employer, defendant New York City Department of Environmental Protection ("defendant" or the "DEP"), alleging a violation of his Fourteenth

Amendment right to procedural due process. Plaintiff seeks injunctive relief, lost wages, compensatory damages, and attorney's fees.

On December 4, 2013, the DEP filed a motion to dismiss Kelly's complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff opposed and in the alternative requested leave to amend his complaint pursuant to Rule 15(a)(2). Defendant replied. Oral argument was heard on Tuesday, February 4, 2014, in Utica, New York. Decision was reserved.

## II. FACTUAL BACKGROUND

For reasons explained in more detail below, the pertinent factual allegations are taken from Kelly's Proposed Amended Complaint ("Amended Complaint") and are assumed true for purposes of the DEP's motion to dismiss.

Kelly was employed by the DEP as a Project Manager when he was arrested for possession of a controlled substance. Am. Compl. ¶¶ 5, 9. Based on this arrest, defendant initiated disciplinary proceedings against plaintiff for "conduct prejudicial to good order and discipline." On February 16, 2012, the parties entered into a "Settlement and Waiver" (the "Last Chance Agreement").[1] Id. ¶ 11. The Last Chance Agreement advised plaintiff of his rights to a formal hearing and appeal under §§ 75 and 76 of New York's Civil Service Law and indicated, in relevant part, that the following penalty had been recommended:

> A thirty (30) calendar day suspension without pay (to be credited against time already served as a pre-hearing suspension); unannounced controlled substances and/or alcohol testing by the

---

[1] The factual scenario presented in Kelly's Amended Complaint relies heavily on the terms and effect of this Last Chance Agreement. The DEP provided a copy of this document in support of its motion to dismiss. See Traverse Decl., Ex. A, ECF No. 10-2. Plaintiff has reproduced the Agreement's relevant language in his opposition papers. Pl's Mem. Opp'n 11. Accordingly, it will be considered in resolving this motion. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).

> Agency, at the total discretion of the Agency, for one (1) year from the effective date of this settlement, **with automatic termination upon a positive test result** . . . . (emphasis added).

The Last Chance Agreement further stated:

> I accept said decision, and as a condition of accepting such decision, I hereby waive any and all rights granted to me under Sections 75 and 76 of the Civil Service Law and acknowledge that this acceptance is the same as a finding of guilt after a hearing. I am fully aware that this waiver of my right to a Section 75 hearing is final and irrevocable.

On April 16, 2012, approximately two months after signing the Last Chance Agreement, Kelly arrived at work and was informed by his supervisor, Tom DeJohn ("DeJohn"), that he was going to be drug tested that morning. Id. ¶¶ 15-16. DeJohn drove plaintiff to the Sunrise Laboratory Office ("Sunrise Lab") in Kingston, New York, where the drug test was administered by two Sunrise Lab employees. See id. ¶¶ 13, 17-20. Plaintiff alleges that this drug test was negligently performed in violation of 49 C.F.R. Part 40. See id. ¶¶ 17-20. The very next day, plaintiff provided a urine specimen for an independent testing laboratory pursuant to the terms of a separate drug treatment plan of which he was enrolled. Id. ¶ 22. This drug test was negative. Id. ¶ 22.

Nevertheless, the urine specimen Kelly supplied to Sunrise Lab as a condition of the Last Chance Agreement later tested positive for cocaine. Am. Compl. ¶ 21. On May 3, 2012, the DEP terminated plaintiff in reliance on this positive test result. Id. ¶ 23. Sixteen months later, plaintiff filed this lawsuit.

## III. **LEGAL STANDARDS**

### A. **Leave to Amend**

Leave to amend a pleading should be freely given "when justice so requires." FED. R. CIV. P. 15(A)(2). Where, as here, a party seeks leave to amend while a motion to dismiss is pending, a court "has a variety of ways in which it may deal with the pending motion [to dismiss], from denying the motion as moot to considering the merits of the motion in light of the amended [pleading]." Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 384 (D. Conn. 2008) (internal quotation marks and alteration omitted).

Kelly seeks to amend his complaint to set forth further allegations in support of his claims. See Spicer Decl., ECF No. 16-1, ¶ 3. The DEP has had sufficient opportunity to respond to this cross-motion and asserts in its reply memorandum of law that these amendments would be futile. See Def.'s Reply Mem. 2. Therefore, the merits of defendant's motion to dismiss will be considered in light of plaintiff's Amended Complaint. If the proposed Amended Complaint cannot survive a motion to dismiss, then plaintiff's motion to amend will be denied as futile. See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

### B. **Motion to Dismiss**

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (FED. R. CIV. P. 8(A)(2)), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662,

679 (2009). Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims. See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face"). When considering a motion to dismiss, the pleading is to be construed liberally, all factual allegations are deemed to be true, and all reasonable inferences must be drawn in the plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

## IV. DISCUSSION

Kelly's § 1983 claim is based on an alleged violation of his Fourteenth Amendment right to procedural due process. Specifically, he alleges that he was entitled to a pre-termination hearing to contest the results of the April 16, 2012, positive drug test. The DEP argues plaintiff's complaint must be dismissed because: (1) an adequate post-deprivation remedy was available; (2) plaintiff waived his constitutionally protected property interest in employment by signing the Last Chance Agreement; and (3) the factual allegations in the Amended Complaint fail to plausibly establish municipal liability.

"It is well-settled that Section 1983 itself 'creates no substantive rights' but rather 'provides only a procedure for redress for the deprivation of rights established elsewhere.'" Reed v. Medford Fire Dep't, Inc., 806 F. Supp. 2d 594, 609 (E.D.N.Y. 2011) (quoting Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993)). The procedural component of the Fourteenth Amendment's Due Process Clause bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . without due process of law." Castine v. Zurlo, 938 F. Supp. 2d 302, 309 (N.D.N.Y. 2013) (Hurd, J.) (quoting Zinermon v. Burch, 494 U.S. 113, 125 (1990)). A procedural due process inquiry entails two issues: (1) "whether there exists a . . . property interest of which a person has been deprived," and if so, (2) "whether

the procedures followed by the State were constitutionally sufficient." Id. (quoting Oneida Indian Nation of N.Y. v. Madison Cnty., 665 F.3d 408, 428 (2d Cir.2011) (internal quotations omitted).

### A. Article 78 Proceeding

The DEP first argues that Kelly could have adequately contested his termination in a post-deprivation Article 78 proceeding and his failure to do so precludes the assertion of a § 1983 claim in federal court. Kelly responds that a public employee is entitled to a pre-termination hearing regardless of whether post-deprivation remedies are available.

Generally, "there can be no procedural due process violation when the state provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies." Reed, 806 F. Supp. 2d at 610 (quoting N.Y. State Nat'l Org. for Women v. Pataki, 261 F.3d 156, 168 (2d Cir. 2001)) (internal quotation marks omitted); see also Lipson v. Snyder, 701 F. Supp. 541, 543 (E.D. Pa. 1988) (noting that the Supreme Court has limited the scope of procedural due process protection "because creative attorneys began to dress up common law torts as procedural due process violations").

But the mere availability of an Article 78 proceeding does not always satisfy the requirements of procedural due process. The Supreme Court has distinguished between violations based on (a) established state procedures and (b) random, unauthorized acts by state employees. Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880 (2d Cir. 1996) (citing Hudson v. Palmer, 468 U.S. 517, 532 (1984) and Parratt v. Taylor, 451 U.S. 527, 541 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). As the Second Circuit has explained, the rationale for this distinction is plain: "[if] the challenged misconduct is random and unauthorized, it is impossible for the

government to anticipate and prevent the wrongful loss . . . in advance, and it has no realistic alternative other than to adopt remedies capable of righting the wrong after the deprivation." Locurto v. Safir, 264 F.3d 154, 172 (2d Cir. 2001) (citations omitted).

Counsel for both parties at oral argument strenuously asserted that each was entitled to prevail on the basis of this case law alone. The DEP suggests that its decision to terminate Kelly pursuant to the Last Chance Agreement was a random and unauthorized act. Assuming the truth of that proposition, it is absolutely correct in further asserting that the availability of an Article 78 proceeding "constitutes a wholly adequate post-deprivation remedy for due process purposes." Id. at 175. However, the Last Chance Agreement at issue here was the product of a settlement between the parties to end disciplinary proceedings related to plaintiff's underlying arrest. This Agreement was also signed and witnessed by both plaintiff and the DEP Commissioner (or his designee).

As the Second Circuit has noted, "[t]he distinction between random and unauthorized conduct and established state procedures . . . is not clear-cut." Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006); see also Locurto, 264 F.3d at 173 ("Given the uncertainty of this area of the law . . . we decline to resolve whether defendants' alleged misconduct was 'random and unauthorized.'"). Drawing all reasonable inferences in Kelly's favor, it would be improper to definitively declare that his termination under these circumstances was a "random and unauthorized act." Accordingly, the DEP's motion to dismiss on this basis will not be granted.

### B. Property Interest

The DEP next argues that Kelly "waived his right to challenge any subsequent positive drug test, whether through . . . arbitration proceedings, a hearing under N.Y. Civil Service

Law [ ], or constitutional claims such as this one." Def.'s Mem. Supp. Mot. to Dismiss 5. Plaintiff did not directly contest the validity of the release in either his opposition papers or at oral argument. Rather, he suggests that it would be "the height of unconscionability for [p]laintiff to have waived or released [d]efendant from its own or failure to properly undertake the April 16, 2012 drug test and the ability to contest the results." Pl.'s Mem. Opp'n 12-13.

Property interests "are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" O'Neill v. City of Auburn, 23 F.3d 685, 688 (2d Cir. 1994) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985)). "In order to have an interest protectable under the Constitution, a person must have a 'legitimate claim of entitlement to it.'" Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir.2002) (quoting Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972)).

In the employment context, such an interest is typically established by showing that under the provisions of a statute or collective bargaining agreement, the employee cannot be terminated or demoted without a hearing. Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313–14 (2d Cir.2002). New York Civil Service Law § 75 gives covered employees a property interest in their employment, "so that they may not be terminated without notice and hearing." O'Neill, 23 F.3d at 688; see also N.Y. CIV. SERV. LAW § 75(1). This state-law property interest is a constitutionally protected property interest for purposes of the Fourteenth Amendment. See Taravella v. Town of Wolcott, 599 F.3d 129, 134 (2d Cir 2010).

Both parties misconstrue the scope of the Last Chance Agreement. The DEP correctly cites Taddeo v. County of Niagara and Marrero v. City of New York for the broad

proposition that a knowing and voluntarily waiver of constitutional claims is enforceable when given as consideration in exchange for the settlement of pending disciplinary charges.

The Taddeo court granted summary judgment in favor of the defendant municipality where the plaintiff had signed a "last chance agreement" that included a waiver of the plaintiff's right to "a grievance, arbitration and any other legal process" to challenge his termination following a positive drug test. Taddeo v. Cnty. of Niagara, No. 06-CV-832C, 2010 WL 980260, at *8 (W.D.N.Y. Mar. 15, 20102), aff'd, 413 Fed. Appx. 397 (2011). Similarly, the Marrero court granted a motion to dismiss in favor of the defendant municipality where the plaintiff signed a "last chance agreement" waiving his right to "any hearing or right to be heard for the purpose of contesting this agreement." Marrero v. City of New York, No. 10-Civ-4471(GBD), 2011 WL 167847, at *3 (S.D.N.Y. Jan. 13, 2011).

In both cases, the court upheld an expansive waiver of rights that effectively precluded the employee from subsequently asserting any claims based on their termination. But the Last Chance Agreement at issue here is far less expansive. It does not contain sweeping language that purports to bar Kelly from pursuing any remedies related to his termination. Rather, it merely provides for a specific, straightforward consequence as a result of any positive drug test. In other words, the Agreement contains a simple waiver of precisely the intermediate step to which plaintiff alleges he is entitled—a pre-termination hearing.

It is settled law in New York that "[p]rovided the waiver is freely, knowingly, and openly arrived at, without taint of coercion or duress, a party may, by stipulation, waive [his] right to the procedural due process to which [he] is otherwise entitled under New York State Civil Service Law . . . and any cause of action pursuant to 42 U.S.C. § 1983." Wilson v. Jackson, 161 A.D.2d 652, 653 (N.Y. App. Div. 2d Dep't 1990) (collecting cases); see also Whitehead

v. State of New York, Dep't of Mental Hygiene, 71 A.D.2d 653, 654 (N.Y. App. Div. 2d Dep't 1979) (noting same), aff'd, 412 N.E.2d 1323 (1980). Indeed, New York Courts have repeatedly approved of "last chance agreements" containing waivers of an employee's pre-termination hearing rights. See Presti v. Farrell, 23 A.D.3d 211 (N.Y. App. Div. 1st Dep't 2005) (approving a pre-termination waiver where the last chance agreement involved "automatic resignation" language); Dominguez v. O'Flynn, 99 A.D.3d 1250, 1251 (N.Y. App. Div. 4th Dep't 2012), leave to appeal denied, 983 N.E.2d 771 (2013) (collecting cases and noting that "a public employee may give up rights that [he] would otherwise have").

The allegations in Kelly's Amended Complaint confirm that the Last Chance Agreement was "freely, knowingly, and openly arrived at, without taint of coercion or duress." First, Kelly readily acknowledges that he signed the Agreement when he was employed by defendant as a Project Manager—a managerial role within the agency. Am. Compl. ¶¶ 5, 11. Courts have routinely held that supervisory employees are able to understand a straightforward waiver such as the one at issue here. Cf. Marrero, 2011 WL 167847, at *3 ("Plaintiff was a supervisor in the [City of New York's] department of sanitation and understood the straightforward release."); Campbell v. Alliance Nat'l Inc., 107 F. Supp. 2d 234, 240 (S.D.N.Y. 2000) ("This Court has held that 'a plaintiff with a high school education and management experience [is] capable of understanding a straightforward release.'"). Plaintiff further alleges that he signed the Last Chance Agreement to resolve pending disciplinary charges against him. See Am. Compl. ¶ 11; Faillace v. Port Auth. of N.Y. & N.J., 130 A.D.2d 34, 41 (N.Y. App. Div. 1st Dep't 1987) (noting that a waiver can serve "as the quid pro quo for countervailing benefits" such as a cessation of disciplinary proceedings). Finally, the Agreement itself is a mere two pages of text that clearly indicates plaintiff agreed

to unannounced drug testing "at the total discretion of the [DEP]" and that he would suffer "automatic termination upon a positive test result."

A construction of the Last Chance Agreement as having any other effect than waiving Kelly's pre-termination hearing rights would be illogical—if he had retained his right to a pre-termination challenge of the positive drug test, it would render the "automatic termination" language meaningless and place him in the same position as if he had never even signed it.

"Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. While the Last Chance Agreement at issue here certainly did not have the broad preclusive effect of the releases contemplated in Taddeo and Marrero, the DEP's decision to "automatically" terminate plaintiff cannot form the basis of a § 1983 procedural due process claim because he clearly waived his state-created interest in such a hearing. Accordingly, defendant's motion to dismiss on this basis will be granted.

### C. Monell Liability

The DEP also argues that, even if Kelly retained a constitutionally protected property interest, the Amended Complaint fails to state a viable § 1983 municipal liability claim. Plaintiff does not directly respond to this argument.[2]

Municipal liability under § 1983 requires a plaintiff to show that the "municipality violated a federally protected right through (1) municipal policy, (2) municipal custom or

---

[2] Kelly's Amended Complaint adds four individual defendants to the caption: Carter H. Strickland, Jr., Steven W. Lawitts, Robert Groppe, and Thomas DeJohn. Presumably, these are individuals somehow responsible for the alleged violation of his procedural due process rights. However, with the exception of a single reference to Thomas DeJohn as being the individual who drove him to Sunrise Lab, plaintiff has given absolutely no indication of how these individual defendants were involved in the factual scenario presented in the Amended Complaint or what actions they took to deprive plaintiff of his rights.

practice, or (3) the decision of a municipal policymaker with final policymaking authority." Zherka v. DiFiore, 412 Fed. Appx. 345, 348 (2d Cir. 2011). It is insufficient to merely allege conduct attributable to the municipality. Rather, a plaintiff must demonstrate that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." Id. "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998).

As a threshold matter, Kelly has incorrectly named the DEP as the defendant in this action. The Charter of the City of New York provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any other agency, except where otherwise provided by law." N.Y. CITY CHARTER § 396. At least two other federal courts have dismissed § 1983 claims against the DEP because they were improperly named as a defendant. See Bissinger v. City of New York, Nos. 06-Civ-2325(WHP), 06-Civ-2326(WHP), 2007 WL 2826756, at *5 (S.D.N.Y. Sept. 24, 2007); Russell Pipe & Foundry Co. v. City of New York, No. 94-CIV-8642(JFK), 1997 WL 80601, at *6 (S.D.N.Y. Feb. 25, 1997). Because neither party has addressed this deficiency, the Amended Complaint is construed as against the City of New York for purposes of this analysis.

Here, Kelly alleges that the DEP's "unwillingness to abide by the constraints of due process arises out of a customary practice." Am. Compl. ¶ 31. But a viable Monell claim requires more than a sweeping, generalized reference to allegedly unlawful conduct. See Nicholas v. City of Binghamton, No. 10-CV-1565, 2012 WL 3261409, at *15 (N.D.N.Y. Aug. 8, 2012) (McAvoy, S.J.) ("The 'mere assertion . . . that a municipality has such a custom or

policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'"). Even assuming arguendo that the actions of the two Sunrise Lab employees are attributable to the DEP, Kelly consistently refers to their conduct as "negligent" and does not identify how their actions were part of an overarching custom or policy.[3] The improper conduct related to the drug test at Sunrise Lab alleged in the Amended Complaint merely describes a single incident involving actors below the policy-making level.

Simply put, Kelly's Amended Complaint is devoid of factual allegations that would even circumstantially support an inference of Monell liability. It neither alleges any sort of directive from the DEP that may have guided the conduct of the individuals involved nor indicates whether defendant was somehow directly responsible for the events that caused the allegedly improper drug testing procedure at Sunrise Lab. It references no pattern of behavior or prevailing policy that worked against him. It is even unclear whether the Last Chance Agreement was a routine arrangement, or for that matter, a form of special punishment (or, perhaps, solicitude) given exclusively to him. Because the Amended Complaint has not plausibly alleged Monell liability, plaintiff has failed to state a claim for relief. Accordingly, this is a second basis to grant defendant's motion to dismiss.

## V. **CONCLUSION**

While the Last Chance Agreement does not completely preclude Kelly from challenging the positive drug test result, he clearly waived his pre-termination hearing rights and cannot now claim such an entitlement as the basis of a § 1983 procedural due process

---

[3] Negligence is, of course, not sufficient to sustain a § 1983 action.

claim in federal court. Even if this were not the case, the allegations in the Amended Complaint are insufficient to establish Monell liability. Insofar as Kelly seeks to challenge the reasonableness of the DEP's reliance on the positive drug test result obtained from the urine specimen he gave to Sunrise Lab, such a claim could have been raised in an Article 78 proceeding, which authorizes state courts to determine whether the actions of an administrative agency, such as the one here, were arbitrary and capricious. A state court negligence action against Sunrise Lab, its employees, and the defendant might also be a possibility. Because plaintiff's § 1983 claim will be dismissed, his cross-motion to amend must be denied as futile.

Therefore, it is

ORDERED that

1. Defendant DEP's motion to dismiss is GRANTED;

2. Plaintiff Kelly's cross-motion for leave to amend is DENIED; and

3. The Complaint is DISMISSED.

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 4, 2014.
    Utica, New York.